LAMSON CASH-RAILWAY Co. *v.* MARTIN and others.

*(Circuit Court, D. Massachusetts.* May 2, 1887.)

1. PATENTS FOR INVENTIONS—STORE-SERVICE APPARATUS.

In the improvements in store-service apparatus patented by letters patent, No. 221,488, dated November 11, 1879, granted to J. C. White, the cars hang below the rail, being secured to the wheels by a hanger. On the return track there is a series of graduated stops, which consist of small quadrangular pieces of metal projecting from the lower side of the rail. These stops are graduated, the second projecting further than the first and so on. Upon the hangers are placed pins projecting horizontally. These pins are placed higher or lower on the hangers, the object being to stop the car near where the salesman stands. In the Martin system, on the return track the boxes are thrown off the track, and into a receptacle at their proper stations, by a system of switching. The motive power is supplied by a cable below the track, to which the boxes are attached by gripping jaws. The track is composed of two wires, and a third wire, which is located above the other two, and embraces two notches in the upper part of the box. Each box has two pins, projecting from its upper surface, which are graduated or located in different positions on each box. At the stations the wire is cut away, and several flat bars of metal are supported above the track, two of which are bent outward. When a car comes along whose pins are so graduated that they pass between the bent bars, it is turned to one side, and crowded off the track. The car is detached from the cable at the curved bars by means of a lever upon the car striking a cam attached to the frame, and so releasing the grippers. The car falls into a receptacle, around which is a fence, and in jumping from the tracks the car strikes against the fence at the upper end of the receptacle, and bounds back into the bottom of it. *Held*, that, in view of the marked differences, the Martin system did not infringe the White patent, even construing it as for a primary invention.

2. SAME—EQUIVALENT.

Letters patent No. 229,783, dated July 6, 1880, issued to J. C. White, is for two contrivances for propelling the carriers, one of which consists of a continuous band of steel, leather, or other flexible material passing round pulleys on vertical shafts, the carriers being hung to the moving band, or to hooks upon the band, the band constituting both the way and the propelling device while in the other the ways are stationary, and the propelling device is a flexible cord or belt traveling in proximity to the ways, and provided with projections or knots against some portion of the carriers supported by the ways. The carriers are discharged by being raised and tilted by a stationary inclined plane, with which some portion of the carrier comes in contact. *Held*, that the spring gripping jaws in the Martin system, which hold the carrier to the cable, are not the equivalent of the devices in the White patent for holding the carrier to the band, nor is the method of discharge in the Martin system the equivalent of the method of discharge adopted in the White invention, and that the White patent is not infringed by the Martin system.

3. SAME.

Letters patent No. 273,526, issued to H. H. Hayden, March 6, 1883, for improvements in the means of transportation and the construction of the ways, propellers, and carriers, and of the connecting and releasing devices, describes a cable running in a split tube, and the carrier is attached to a piece or finger projecting from the cable. *Held* not to be infringed by the connecting device in the Martin system.

In Equity.

Bill for the infringement by the defendants of five letters patent, viz.: No. 221,488, to J. C. White, granted November 11, 1879; No. 229,783, to J. C. White, granted July 6, 1880; No. 241,008, to H. H. Hayden, granted May 3, 1881; No. 273,525, to H. H. Hayden, granted March

6, 1883; No. 273,526, to II. II. Hayden, granted March 6, 1883. Complainants notified defendants that they did not propose to rely upon the Hayden patents Nos. 241,008 and 273,525. The patents to White, Nos. 221,488 and 229,783, and the Hayden patent No. 273,526, all relate to conveying apparatus, and the specifications of the patents refer particularly to apparatus for conveying cash and parcels in stores. The apparatus of the defendants, alleged to be an infringement of those patents, is also employed for conveying cash in stores.

*B. F. Thurston* and *M. B. Philipp*, for complainant.

*E. C. Gilman*, *T. L. Livermore*, and *F. P. Fish*, for defendants.

COLT, J. This suit is brought for the alleged infringement of letters patent No. 221,488 and No. 229,783, granted to J. C. White, November 11, 1879, and July 6, 1880, respectively, and No. 273,526, issued to II. H. Hayden, March 6, 1883. Two other patents granted to said Hayden are contained in the bill, but the suit as to them was not pressed at the hearing. The patents all relate to improvements in store-service apparatus.

The case has been presented on both sides with great thoroughness and care. The improvement described in the first White patent consists in automatically stopping the cars sent from the cashier's desk at the proper stations or counters. The present suit is confined to the first claim of the patent, which is as follows:

"In combination with the return track, a series of graduated stops, arranged in connection with the sales-counters, substantially as described, so as automatically to arrest the cars or conveyers at the stations where they respectively belong."

The White apparatus has two single tracks, and is operated by gravity. The forwarding track conveys the cars from the counters to the cashier's desk, while the cars are sent back to the several counters by means of the return track. On this return track there is a series of graduated stops, which consist of small quadrangular pieces of metal projecting from the lower side of the rail. The stops are graduated, the second projecting further below the rail than the first, and the third than the second, and so on. The car hangs below the rail, being secured to the wheels by a hanger. Upon the hangers of the cars are placed pins projecting horizontally. The object is to have each car, on its return from the cashier's office, stop at the counter where it belongs, or near the point where the salesman stands. This is done by placing the pins higher or lower on the hangers. It is manifest that, if the pin is placed high on the hanger, it will strike against the first stop, and stop the car, while, if the pin is placed a little lower, the car will pass the first stop, and strike against the second. By the graduation of the length of the stops with reference to the track, and the corresponding graduation of the position of the pins on the cars, the cars are arrested at the respective stations where they belong.

In defendant's apparatus, called the Martin system, there are two tracks, one above the other. Each of these tracks has supported below

it a continuously running cable which impels the cash-boxes. The boxes are attached to the cable by spring gripping jaws. The lower track is used to carry the boxes to the cashier's desk, and the upper or return track conveys the boxes from the cashier to the different stations. On the return track the boxes are thrown off the track and into a receptacle at their proper stations by a system of switching. The return track is composed of two wires, and a third wire, which is located above the other two, and embraces two notches in the upper part of the box. Each box has two pins projecting from its upper surface. These pins are graduated or located in different positions on each box. At points near the stations, the upper wire is cut away, and there are several flat bars of metal supported above the track. Two of these bars are bent outward. When a car comes along whose pins are so graduated that they pass between these two bent bars, it is turned to one side, and crowded off the track. Upon reaching the curved bars, the car is detached from the cable by means of a lever upon the car striking a cam attached to the frame, and so releasing the cable from the spring grippers. When a car is not to be stopped at a station, the pins will pass between two of the parallel bars near the station, and so the car will be guided to a point on the track where the upper or guiding wire is renewed. The car falls into a receptacle. Around this receptacle there is a fence, and, in jumping from the tracks, the car strikes against the fence at the upper end of the receptacle, and bounds back into the bottom of it.

The first claim of the White patent is found to embrace, in combination with the return track, a series of graduated stops arranged in connection with sales-counters. The important question is whether the Martin system has the series of graduated stops found in the White patent. It cannot be contended, and it is not, that the White patent covers all graduated stops which may automatically arrest the cars at the different stations where they belong. But it is urged upon the court that the White patent is for a primary invention, not in the sense that it lies at the bottom of the art of store-service apparatus, but rather of a branch of that art, and that, therefore, it should receive a broad construction. It is important here to briefly touch upon the prior state of art bearing upon the White invention. In a patent granted to A. E. Beach, November 13, 1866, for a pneumatic railway, there is found described a series of graduated stops, — that is, stops located in a different position with respect to the track at each station and cars, — provided with graduated pins, so that only a specially graduated pin will come in contact with some one graduated stop. Again, in the model Wharton push-switch, referred to in the Wharton patent, No. 30,100, and Wharton pamphlet, cars are switched off from one track and on to another track at certain predetermined places. This is done by a series of graduated cam stops, secured to the track, acting in connection with a series of graduated cylinders attached to the wheels of the cars. It is not pretended that the Beach patent or the Wharton switch anticipated the invention of White, or that they contain all the features of the White patent, but they do show that the use of graduated cam stops in combina-

tion with graduated pins, or their equivalents, on cars, to partially or wholly arrest the cars, or switch them off the main track at certain predetermined points or stations, was not broadly new at the date of White's patent. It is apparent that Martin built up his apparatus upon the old Wharton switch. If you add bumpers or fences to the Wharton series of switches, against which the cars will strike when turned off the main track, you come close to the Martin apparatus. Without attaching too much importance to the prior state of the art, but giving the White patent a liberal construction, it seems to me the defendants' apparatus is so different that it cannot be said to embody the White invention. To cite the language of Henry B. Renwick, one of the defendants' experts·

"In White's contrivance, a graduated pin brings up dead against a graduated stop, and the conjoint action of the two is to stop the car on the track. In defendants' contrivance, a graduated pin strikes against a graduated cam, and the joint action of the two is to switch the car off the track, and not stop its motion. In defendants' contrivance, the fences which check the forward motion of the car are at all stations the same, and bear the same relation to the track. In White's contrivance, the stops which stop the various cars are graduated stops, occupying different relations to the main track. In White's contrivance, the cars are brought to rest as they are going forward towards their destination. In defendants' contrivance, they are finally stopped as they are jumping backwards in the opposite direction. With White's contrivance, as a whole, the cars are stopped on the track, and in the way of all other cars, until they are removed. By the use of the defendants' contrivance, the cars, when they are stopped, are off the track and deposited in a receptacle out of the way of all other cars."

It is true that the defendants' apparatus contains some of the devices which enter into the first claim of the White patent, such as a return track, sales-counters, and a forwarding track, if, by implication, it should be construed into the claim as contended by the plaintiff. It is also true that defendants' contrivance operates to automatically arrest the cars at different stations, but, in my opinion, the defendants' contrivance does not contain the graduated stops found described in the White patent, and which is the important element of the first claim. I know it is pressed with much vigor that the inclined guide of the Martin system, acting conjointly with the fence, is in substance the graduated White stop. I cannot adopt this view. For the reasons already given, it seems to me that the Martin series of graduated stops is not the same and cannot fairly be considered the equivalent of those described in the White patent. In view of the marked differences between the two contrivances, I do not feel warranted in holding the defendants as infringers, even under the broad construction of the White patent which the plaintiff contends for.

The second White patent, No. 229,783, relates to the means for propelling the carriers. The specification says:

"My invention consists in combining with the carriers certain means for driving the same along their courses by positive movements derived from suitable motors. * * * In applications for patents heretofore filed by me, and in letters patent granted to me on the eleventh day of November, 1879, I have shown and described a store-service system in which inclined rails ex-

tending over the counters to and from the main desk, constitute the ways on which carriers can pass automatically by gravity, conveying money and articles from each counter to the central desk and back again to the counter. This invention, therefore, does not consist broadly of an automatic communication between the counters and the desk of a store, but consists of different means for carrying out this central feature, having for its object to provide means for positively operating the carriers from some suitable motor. Various appliances may be used in effecting this result."

The specification goes on to describe, in a somewhat imperfect way, two contrivances,—one of which consists of a continuous band of steel, leather, or other flexible material, passing around pulleys on vertical shafts, the carriers being hung to this moving band, or to hooks upon the band, and the band constituting both the way and the propelling device; in the other contrivance the ways are stationary, and the propelling device is a flexible cord or belt traveling in proximity to the ways, and provided with projections or knots for bearing against some portion of the carriers supported by the ways. Then the patentee says:

"Any other available means may be made use of, however, for driving the carriers. For instance, the carriers may be propelled in tubular ways, by compressed air."

Claim 2 of the patent is as follows:

"The combination of counters, desk, ways, and carriers, and appliances whereby each carrier is automatically driven along its way from the counter to the desk and from the desk back to said counter, substantially as set forth."

On the first of October, 1886, the complainant filed a disclaimer, limiting the scope of the second claim to a combination of counters, desk, ways, and carriers, and appliances whereby the carriers are all automatically driven along one way, each from its counter to the desk, and automatically arrested there, and along another way from the desk back to the counters from which they were sent, and each only automatically arrested at the counter from which it was sent, substantially as set forth in the descriptive part of the specification of the patent. The object of this disclaimer is to restrict the second claim to an apparatus having appliances for automatically arresting the carriers at the counters to which they belong, and from which they were sent, consisting of the graduated inclined bars working in connection with pins or other projections on the carriers, as described in the patent, so that the carriers will not only be arrested automatically, but removed from the way at the same time. The defendant contends that these graduated stops are not made an element of the second claim, and, upon reading the whole specification, and considering the intended scope of the patent, I am inclined to adopt this view. It is also said that the disclaimer estops the complainant from denying that the claim, as originally drawn, was not too broad, and so from contending that it involved as one of its elements a series of graduated stops. And it is further urged that you cannot, by a disclaimer, incorporate a new element—namely, graduated stops—into the second claim. There is much force in this reasoning; but even if the claim, as

restricted by the disclaimer, should be held to be valid, and so cover the graduated stops, I am unable to hold the defendants liable, because in their apparatus they do not make use of the graduated stops described in the White patent. In the White patent the carriers are either hooked upon pins projecting from the band, or are hung on the band itself. The carriers are discharged by being raised and tilted by a stationary inclined plane with which some portion of the carrier comes in contact. It is by no means clear on the evidence that this is a practically working device. But, assuming that it is, the defendants' contrivance is quite different. They employ other and distinct means for discharging the carrier. The spring gripping jaws in defendants' apparatus, which holds the carrier to the cable, are not the equivalent of the devices in the White patent for holding the carrier to the band. In defendants' structure the discharge of the carrier is accomplished by moving the carrier from the main track, opening the jaws, and finally running it upon a side track until it meets the fence or abutment. White bodily lifts the carrier out of connection with the moving band, and tilts it away from the band. In my opinion, the defendants' apparatus does not infringe this White patent.

The last patent we have to consider was granted to Harris H. Hayden, March 6, 1883. The invention relates to improvements in the means of transportation and the construction of the ways, propellers, and carriers, and of the connecting and releasing devices, in store-service apparatus. The claims in controversy are as follows:

"(8) The combination, with the traveling cable and carriers, of jaws are ranged upon one of the same, and holding the carrier to the cable, locking devices and stops arranged to make contact with said locking devices, to open the jaws and disconnect the carriers from the cable, substantially as set forth."

"(13) The combination, with the way, cable, and terminal stop, I, of a receptacle arranged to receive and hold the carriers as they successively drop from the cable by contact with said stop, substantially as set forth."

"(17) The combination, with a traveling cable and appliances, whereby carriers are moved with and automatically detached from the cable, of receptacles arranged to receive and retain the carriers when so detached, substantially as specified."

"(19) The combination, in a store-service system, of ways, traveling carriers, detaching devices arranged opposite the respective stations, and constructed to disconnect each carrier at the station to which it belongs, and receptacles at said stations, supported in fixed positions to receive the carriers when detached, and constructed as set forth."

The difficulty with the plaintiff's case here, as in the other patents under consideration, is that the defendants' apparatus is of different construction. The Hayden patent describes a cable running in a split tube, and the carrier is attached to a piece or finger projecting from the cable. The specification says the dogs may bite the cable directly, but no means are described how this can be done, and therefore this mere statement cannot serve to broaden the claims. In defendants' apparatus, the cable is directly gripped by jaws attached to the carrier. There are other differences between the locking and unlocking devices of Hayden and de-

fendants' apparatus. I do not deem it necessary, however, to enter into further details or comparisons. The prior state of the art, it seems to me, limits Hayden to the particular devices described in his patent or their equivalents, and I find the locking and unlocking devices in the two contrivances quite different. If claim 13 cannot be said to include the locking or unlocking devices as an element, then it is void for want of invention; for, in view of the White patent No. 229,783, to merely add a receptacle to receive and hold the carrier after becoming detached from the cable would not constitute invention.

In my opinion, the defendants do not infringe either of the three patents relied upon by the plaintiff, and the bill must therefore be dismissed.